Hey, please, the court. Kara Hartzler on behalf of Petitioner Javier Lara-Flores. Under the modified categorical approach, the government has failed to prove that Mr. Lara violated a protection order relating to a person with whom he had a domestic relationship. First, the government has not shown that the March 2005 protection order is actually the order Mr. Lara was convicted of violating. Second, even if it could show that, nothing in this order establishes that Mr. Lara had a domestic relationship with the person named in that order. Because the government has thus failed to meet its burden to prove immobility, the court should grant the petition and vacate the order of removal. First, I'd like to... Do we have the second order in the file, or is there just the one? As I understand it, there were at least two? There were at least two, Your Honor. And actually below, there was an order that the government believed was the one that was actually the order that was violated. And now at the appellate level, the government is actually contending that it's a different order. So the government is now saying that it's the order that was issued on March 25, 2005. So our first argument is that the government never actually shows, in fact, that this is the order that he was convicted of violating. And that's obvious, I think, by the fact that there was some confusion below about this. And there isn't really any clear evidence that links that protection order to this conviction. Now, several days ago, the government submitted a 28-J letter to this court purporting to rely on Mr. Lara Flores's admissions. The problem with that is that if you actually look at what he admitted, he did admit to the fact that he was enjoined under protection order. Now, it's a different date, as I pointed out. But he specifically denies the allegation, saying that he was convicted of that particular protection order. And there's nothing else in the record showing that he was convicted of that order, and there's no documents that link those two together. What was the date of the second one? The second one, I believe, was November 4, 2005, Your Honor. And that's the one he says he was convicted of? No, that's the one that the government at the IJ and BIA level said he was convicted of. Okay, and that's the one we have in the record. That's the one we have in the record. But we also do have the March one in the record. And that's at, I believe, ARS, I'm sorry, AR 138. Thank you. So the first problem with the government's case is that they can't show that he was actually convicted of this protection order. Now, even if the government could show that he was convicted of this protection order, this still wouldn't help. And the problem is because there's no showing in that protection order that the person named in that order is actually the victim of domestic violence. Now, under this statute, 136.2, it's possible to be convicted under this statute for either contact with the victim or with the witness to a domestic violence incident. So the government here has never shown that the person named in that protection order was the victim rather than the witness. Would the order protect both or would it be unique as to the witness? I'm not entirely clear on that, Your Honor. My understanding from reading California case law is that it probably would be unique to one or the other, but I'm not entirely sure on that. Well, if the purpose is to prevent further acts of violence, why wouldn't it be logical to assume that it applied both to the victim and anyone who was a witness to that particular act of domestic violence? 136.2 is actually not necessarily related to domestic violence. It's actually considered an obstruction of justice statute by California. So it's just as dedicated to any sort of witness tampering, dissuading a witness, trying to keep a witness from testifying, as it is to any sort of domestic violence. It's not true, but he admitted that he violated a protective order. He did. Not just obstructed justice in a general sense. He admitted that he violated a protective order. Actually, Your Honor, he admitted that he was enjoined by a protective order. He did not admit that he violated that. What was he convicted of? He was convicted of count one, and that count states that in violation of section Mr. Lara Flores did willingly, knowingly, and unlawfully violate a protective order. Didn't he plead guilty to that? He did. And in that sense, Your Honor, yes. I'm speaking more in terms of admissions. It says more than that. I'm looking at the criminal complaint. It goes on to say after conviction in a criminal proceeding involving domestic violence is defined in section 13,700. That's correct. But a condition of probation for domestic violence doesn't necessarily relate exclusively to a protection order that's designed to protect against credible threats. I guess the question would be whether or not that is sufficient to establish substantial evidence to affirm the Board's ruling. Would that be the issue? I think what we're looking at here is, is there clear and convincing evidence? And this is under the modified categorical approach. So under the modified categorical approach, there has to be something in the record showing that it was the victim rather than a witness. And there's just nothing here showing that. Can we make inferences that would support that? No, Your Honor. Under Ruiz Vidal, this said that speculation is not enough. Well, that's not an inference. It's different than a speculation as I see it. So with all of the evidence in the record, you don't think it's a reasonable inference that the victim of domestic violence and a protection order are the same? No, Your Honor. And that's exactly the kind of situation that the categorical approach was designed to keep from happening. The modified categorical or the categorical? Both the categorical or the modified. Because we're at the modified categorical. We are at the modified categorical. That's correct, Your Honor. But that's exactly the kind of thing that the categorical approach doesn't allow. But we're not at the categorical. I'm sorry. I'm sort of using those interchangeably. I apologize. At the modified categorical. So, for instance, in Ruiz Vidal, that was a classic case where the person was charged with possession of a certain type of drug, cocaine. He was charged with possession for sale. And then he pleaded guilty to simple possession. And the government argued and said, well, you know, you can infer, you can make this reasonable inference that it was the same drug. And that would be a reasonable inference. But the court said, no, that's not enough. Here's my problem. I'm having a hard time understanding why, if someone pleads guilty to violating the protective order, and the protective order prohibits domestic violence against the named person and witnesses, why that isn't the end of the inquiry? If it includes witnesses, is that, for instance, is the court asking, if you are violating a protection order that's designed to protect witnesses, why does that also not go to the protection order? The order protects the named person. In this case, Ms. Dallara, I believe. Right? But we don't know that she was the victim rather than a witness. Well, that's what I'm saying. I don't know that it matters. If it protects her and if it protects the people who witness her being abused and he admits that he violated that order, I don't understand what the problem is exactly. Nothing in the record shows that she is the victim of domestic violence rather than a witness. It doesn't matter. He pled guilty to violating that order. But we don't know that he pled guilty to violating that order. We do know he pled guilty. It's a fact in the record that he pled guilty on, I think it was November 4, 2005. We know that he pled guilty. Right. We don't know that it was to that order. Well, I'm having the same problem Judge Silberman is having. I keep going back to the language of the complaint. The complaint says that your client did willfully, knowingly, and unlawfully violate a condition of probation after conviction in a criminal proceeding involving domestic violence. Certainly. To go back to Judge Silberman's question, even if the protective order was designed to protect witnesses as well as the victim, it's still a restraining order issued as a result of a domestic violence conviction. And why isn't that sufficient to permit the Board to conclude that he falls within the terms of the immigration statute? Two reasons. First of all, the condition of probation that he is alleged and pleaded guilty to actually also covers things like attending domestic violence classes. And this Court has already said, as well as the BIA, that that's too attenuated, that that's not good enough to meet the ground of removability that we have here. What case says that? That's Alanis Alvarado, Your Honor. Well, I don't know about that. I think that ruling was very broad in terms of connecting an order. I dissented in that case. I agree with you then, but I bow by what we ruled in that case. And it was really very broad in terms of what constitutes a connection to a protection order. If you wouldn't necessarily go on Alanis Alvarado, you could also look at the Court's decision in Czizlai, which I'm not pronouncing correctly, as well as the Board of Immigration's decision in matter of stridum. Both of those cases said that, for instance, not going to domestic violence classes is too attenuated to satisfy this ground of removability. So even if you don't rely on Alanis Alvarado, Chevron deference is owed to the Board's decision in matter of stridum, which did say that. I see you're down to just a few seconds left. Did you want to say what you had? I would like to. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Carrie Monaco, and I represent the Respondent, Attorney General Eric Holder, in this matter. In this immigration case, the only issue is whether Petitioner's conviction for violation of a protection order under California Penal Code, Section 166C1, renders him removable from the United States under 8 U.S.C. 1227.A2.E2. The government contends that the agency correctly determined that DHS met its burden of establishing under the modified categorical approach that Petitioner's conviction subjects him to removal. So are you conceding that it doesn't meet a categorical map? Yes, we are. I'd like to start with my opposing counsel's arguments regarding whether the March 2005 order is at issue in this case, and whether that order or the conviction documents in this case prove who the holder of the protection order was and what the relationship was to Mr. Lara. What we have here, I'm going to walk through all of the evidence in this case and show that the 2005 order is the one that was violated, and that the holder of that protection order was the victim of domestic violence. So what we have in the record at page 123 is a complaint in an original domestic violence case. It was a March 15, 2005 complaint that contained two charges. One for battery against Jane Doe, spouse of the defendant. The defendant was the petitioner in this case. And also contained a second charge for violation of a protection order. So that complaint was filed roughly contemporaneously with the restraining order? Exactly. And then when you look at the docket sheet, you'll see on March 15, Mr. Lara Flores pled not guilty to both charges. And the judge issued a protection order on March 15. That's on page 125, docket entry 23. Ten days later, on March 25, 2005, the petitioner in this case changed his plea to guilty. And pursuant to that guilty plea, the judge issued a permanent protection order, which is found on page 138. What's the date of that order? March 25, 2005. And in the docket entries that list the issuance of that permanent protection order, it lists the holder of the protection order as the victim, Martina Zamudio de Lara. So we now know from this docket entry on page 127, docket entry 47, which was entered on March 25, 2005, that the protection order was issued to the victim, Martina Zamudio de Lara, in the context of a domestic violence proceeding. And then the complaint in the criminal case at that issue here, the 166C1 conviction in November 2005, the docket sheets for that case list the original case number for the previous case, the one that issued the March 2005 protection order. That docket entry, those docket entries list that previous case as a companion case. How do we know that Martina Zamudio de Lara is Jane Doe? We don't necessarily know she's Jane Doe because that particular charge of the complaint was dismissed as part of the plea agreement. But what we do know from the docket entry is that Ms. Martina Zamudio de Lara is the victim. And in order to... She's not a spouse, mother of his child, or whatever else was listed in the statute. We don't know. I mean, the criminal documents don't necessarily specify what the relationship was, but it doesn't... It doesn't have to be specified so we know that this is domestic violence and not something... I thought it's not limited to spouses. I forget what the term is under California law, but I thought it was some kind of a domestic cohabitant or something. The domestic violence statute, 13700, lists the relationships that are covered under the domestic violence statute, which covers spouses, former spouses, cohabitants, co-parents of children. I was referring to the definition of domestic violence in the Immigration Act, Section 237. That only covers certain people, right? That also... It contains a list of covered relationships, but the end of that definition also states that it covers any individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any state. So any relationship that would be covered by California is, by definition, covered in the immigration statute. Fair enough. What do we know about her relationship with Laura Flores? We know from other documents in the record that Martina Zamudio-Dallara is Mr. Laura Flores' spouse. Okay. How do we know? That's what I'm asking you. How do we know that? We know that from the cancellation application that he submitted to the immigration judge, and we know that from other admissions made during the proceedings to the immigration judge. And the conviction document, again, confirms that she was the victim of domestic violence, and in order to have been the victim under California law, she has to have had one of those protected domestic violence relationships. And so from the conviction documents and from the record, we know that it was the March 2005 order that was violated in this case, and we know from the docket entries of both criminal proceedings that the holder of that protection order was a victim of domestic violence, which then covers that conviction under the removal statute at 1227A2E2. And we also know from the nature of that protection order itself, by the fact that it was issued under Section 136.2 under California law, that it was intended to protect against credible threats of violence, repeated harassment, or bodily injury, and that any violation of such order would be a violation of the provision that was intended to protect against those things. And as a result, DHS has proven with clear and convincing evidence that the petitioner violated a protection order that meets the definition under the Immigration and Nationality Act, and that he violated the portion of the protection order that involved protection against credible threats of violence, repeated harassment, and bodily injury. And as such, the agency's determination that Mr. Lara Flores was removable is correct, and the government urges the court to deny the petition for review in this case. Thank you, Ms. Monica. I asked Ms. Monica how do we know that Martina Zamudia de Lara is the spouse, and you heard her answer. She rattled off a few things. Do you disagree with anything she said? Yes. Well, I don't disagree that he stated this as part of the cancellation application, but what I disagree with is whether the court can use that. And the reason is because Perez Mejia, the exact case that the government cited in its 28-J letter, has said you can't use things in applications for relief to establish removability. That's very clear under this court's case law, and there's good policy reasons for it. If a person believes that he or she might, you know, have admissions during cancellation that are then used to go back and try to prove removability, it would not encourage them to be full and honest and truthful in their application for relief. That's why this court has said very clearly in Perez Mejia that you can only use admissions that the person used at the pleading stage of removability. You can't use anything that came after, especially something that came in an application for relief. And because of that, I think that's the only place that the government says you can establish a domestic relationship. Because they can't point to anything else, even if you disagree with everything else I've said, that's where the government's case fails. It's an odd concept, though maybe it's because we've created it, that an admission in one part of a case cannot constitute an admission in a later part of the case. That doesn't make any sense to me. I would respectfully disagree, Your Honor, and the reason I think it makes sense is because when you're applying for relief, you're trying to show the immigration court, I have remorse. I understand what I've done. I think what I've done is wrong and that I'm going to change my ways. But if he meets the statutory definition of a perpetrator of domestic violence who violated the restraining order,  No, actually, Your Honor, that would be the case if he were undocumented. But here he was a permanent resident, and so everyone agreed below that he was actually eligible for this form of relief, even if he was found removable. But then would it be a discretionary call on the part of the Secretary of DHS or the Attorney General as to whether or not the relief would be granted? That's correct. And here the immigration judge denied relief, and we're not contesting that here. We know the court doesn't have jurisdiction for that. I understand that, but I guess I'm back to my original concern about why do we want to hide that information from the decision-maker. I hear your policy argument, but it still results in a curious dichotomy of an admission for part of a case is not an admission for other parts of a case. Perhaps I could make an analogy to criminal proceedings. So, for instance, when you go in front of a judge for a criminal proceeding, you plead not guilty, and then perhaps you go to trial and you may or may not admit things in terms of establishing guilt. Once guilt is established and you go to the sentencing phase, that's when you're talking about mitigation and you're talking about, well, I understand that maybe I did this or I was found guilty, but the court needs to look at that in terms of my equities as a person. Well, I would draw, I think, a better analogy would be defendant moves to suppress evidence, gets on the witness stand, testifies to various things with regard to the basis of a suppression motion, and then later gets on the stand and tries to testify inconsistently with what he says, and we say, no, you are bound by the admissions that you made and are subject to impeachment because of the fact that you've now testified inconsistently with what you said before. And it seems to me that the effect of this case that you're relying on is to deny the decision-maker the full truth in assessing whether or not in the exercise of discretion he should be granted the relief. I find that to be a very curious result. I would agree with Your Honor if this was a case where perhaps the burden was on us to establish removability, or I'm sorry, to establish the ground, the charge of removal. But here Mr. Well, the burden is on him to establish the ground for relief, right? Correct. But what we're arguing here is that he was a lawful permanent resident and the government had the burden to show removability. So what he did is he exercised his due process right to deny the charge of removal and say the government has to prove this. The government didn't prove it. So then when he went to the relief stage and was asking for grace, basically at the hand of the immigration judge, it makes sense that he would be able to then speak freely and fully without fear that those admissions could be used to help the government meet its burden. I see you're way over time. I'm way over time. I apologize. Thank you, Your Honor. Ms. Monaco, thank you as well. The case just argued is submitted.
judges: Silverman, Tallman, Rawlinson